May it please the Court, Mr. Gnell. This afternoon, gentlemen, I represent Ms. Darlene Shields, a 16-year employee of the Respondent Graphic Artist for nearly 40 years. The interesting thing about the decision from Arbitrator Black, which was rubber-stamped by the three commissioners whose order was included herein, is that he finds that there's no accident. When I got this decision and looked at the discussion and, in fact, even the flattery that he lended my way about my professional advocacy, I'm always glad to see that in a decision, I was So, being a beneficiary of parochial education, I went back to 3D and Durand and Oscar Mayer and said, where did I go wrong? I mean, those are the facts. The lady has a problem. She does a lot of keyboarding. Definitely no contradictory evidence that she pounds that thing practically eight hours a day, sometimes overtime and so on. Well, in fact, the arbitrator found in her favor on causation. That's my belief. So I'm thinking, how do I establish that there's an accident? And, of course, we default to the reasonable man standard. But we all know that as life goes on and we meet the general population, some people never achieve the But the fact of the matter is this. The lady had a problem with her autoimmune disease. Testing was done for ANA. Dr. Vendor makes reference to that as a possible risk factor. I don't know what that means, but that's what he opines. Her age is a possible risk factor. Her intermittent use of the keyboard and mouse is not an activity which, in his opinion, would have given rise to this condition. Now, Dr. DeSanto, neurologist, client sent there by the treating doctor, Dr. O'Connor, says, you know, tell me what you do. That's the And at the time, one would only guess, that the doctor found time to call my client or have her assistant do that. My client testified it was Dr. DeSanto. I have no reason to disagree with that. The doctor says, Darlene, this is work-related. All that stuff you do, that's work-related. Now, do we play let's make a deal or wheel of fortune in a repetitive trauma case where the person continues to work day in and day out, pounding away at their work activity, developing these symptoms, dealing with these things. I beg your pardon, I'm getting a little boisterous. Well, the question is, what difference does it make if she learned on June 10th that her doctor says, it is work-related, that's the day of the injury. Because if you look at Oscar Mayer, if you look at 3D, if you look at Durant, and with all due respect, the Supreme Court decision in Durant, and the dissents in this court's decision, a petitioner shouldn't be punished. They shouldn't have to be worrying about, because if she had gone back in 2001, let's say, as Dr. Vendor makes reference to, what would they have done? Could have said, I got carpal tunnel because I'm getting tingling. Have you gone to a doctor? No. But you want to, well, yeah, because for some reason, I read some count decisions and they say, I've got to let you know, when I know that it's work-related, or believe that it's work-related, or think that it's work-related. But in Durant, the Supreme Court didn't penalize that lady, did they? Even though she was questioned, direct, cross, and recross, about when she knew or thought that it was work-related. The Durant decision seems to conclude, then, that her feeling, her relief, her idea that it might be work-related, is not dispositive of the issue. And I refer to the dissent as enumerated by Justice Holdrich, a reasonable person would not have known of this injury in its punitive relationship to computer keyboard work before the date, in this case of June 10th, in the Durant case, September 8th. Let me interrupt you for just a second, counsel. I'm having a hard time understanding the arbitrator's decision, which was adopted by the commission, because the decision says, Dr. Vendor's opinion is persuasive of the issue of causation. In other words, it seems to me like the arbitrator is saying, yes, she sustained an injury, and yes, it was work-related. So there's some manifestation date out there somewhere. Yes, I agree. However, the arbitrator never found that it's some other manifestation date. So the question is, if it wasn't June 10th, 2009, doesn't the arbitrator have to say when it was? Because then it only matters as to notice or statute of limitations. One would think so. In fact, as we know... Wait a minute. Hold on one second. The arbitrator did say something about it. It doesn't make a lot of sense to me, but he did say something about it. Sequence events is not consistent with the alleged onset date of June 10th, 2009. The petitioner has been wearing night since February of 2001, while she has been keyboarding, using a mouse, and writing at work since 1992 or 1993. The petitioner has also been keyboarding, using a mouse, and writing at home. So he's fixing, he's trying to fix some manifestation date other than February of 2009. There's no question that he concedes that she's injured, and it's causally related. And they found that. Now the question is, did they err in finding that she failed to prove that her manifestation date was June 10th? That's really the only issue in the case. They gave some other dates, they just didn't sit on any of them. And more importantly, she continued to work, and she continued to suffer micro-traumas, as we have those defined, and she continued to suffer and worsen her condition to the point where Dr. Bednar said, you need surgery. You need surgery. I believe that this decision is totally incorrect. I believe it should be reversed, or, as I suggested in my brief pursuit to Section 6, perhaps you can create a remedy for this lady out of whole cloth. Is there evidence in the record, is there any evidence in the record that her job performance suffered prior to June of 2009? No. Nothing noted? Other than her saying that she worked in pain, that she had distress, that she couldn't do those recreational activities like gardening and stuff. But there's no definitive evidence that specifically says her job performance was eroding, and as a result, that's when there was a complete breakdown. That's what forced her to go to Conniff. That's what forced Conniff to send her to DeSanto. She labored with this for a long, long time. And again, in the real world, people in this day and age just don't run to their employers and say, I got hurt, because you have heard multiple cases where persons have repetitive injuries, multiple injuries, and they become what we call in our vernacular frequent flyers. They can become an asthma, both to an employer, and quite candidly in some instances, to a petitioner's lawyer. So those folks who are given, and there are companies that you've confronted, who insist that every possible insult to their body must be reported, I can tell you from personal experience, if somebody says, oh, gee, I whacked my knee, or I stubbed my toe, or I twisted my ankle, no, no, I don't need to go to a doctor, but, you know, you tell me I've got to report every incident. It isn't too long where that person is being considered for discharge, because there's something weird about that. That's anecdotal. Outside the scope of the record, but that's been my experience. Please, reverse this decision. Send it back. Tell them to do the right thing, so we're not in a game show atmosphere when it comes to repetitive trauma injuries. Thank you. I'll reserve for a brief... We'll have time to reply, yes, Counsel. Counsel, you may respond. Thank you. Your Honors, thank you. I'm Denny Nell. I represent the respondent, Mr. Nell. I think the arbitrator's decision should be affirmed. You know, may I touch on the causation issue for just a second, that everybody, I think, so far, the impression I have is that this causation is really established. I'm not really agreeing with that statement, but because he talks about Bednar, he does talk about Bednar saying that it appears that there's an established causation, but we also have, he references Dr. Vendor and the IMEs and so forth and so on, so I don't think it's real clear that causation, per se, is established. In his actual decision, obviously, we all know that he decided that there was no accident or date of manifestation of June 10th of 09. Now, I want to go back to that that Dr. Bednar called her on that day and told her about that. DeSanto. Or DeSanto. I'm sorry, DeSanto, excuse me. And part of the record, which are DeSanto's actual, you know, records from his, you know, treatment for the lady in the EMG, there's no confirmed or documented by DeSanto. And if you look at the record, you know, I objected to that testimony and then Arbitrator Black permitted the testimony and counsel stipulated to this that the only purpose that that testimony was to be used for was for purposes of notice. Had nothing to do with proving a date of manifestation. And that is in the record itself by counsel where he says, you know, we get into this objection issue and then Mr. Oleski says, may I, first of all, the testimony of this petitioner at this juncture is not for the truth of the matter asserted. We're talking about her conversation with DeSanto. We're not going to rely upon Dr. DeSanto conveying to her that it's related to her job. Wait a minute, hold on. I'm sorry. In the arbitrator's opinion, it says Dr. Bednar's opined that there was no causal connection. Yes, sir. Dr. Bednar's opinion is persuasive on the issue of causation. I understand that. And his opinion was there was causation. It becomes, I guess, a matter of semantics. I'm not sure that he doesn't then, though, conclude that there's causation. I don't think based on the body. He concludes that she has a repetitive trauma injury and that it's related to work. That was his opinion, wasn't it? What was his opinion? Well, he said, he says that Dr. Bednar's opinion is persuasive. Now, keep in mind that Dr. Bednar's opinion is dated December 1st of 2009, which Dr. Bednar, by that time, had already performed the first carpal tunnel surgery. What was Dr. Bednar's opinion on causation? There's a report in there that says it's causally connected to the work activities. And the arbitrator's opinion says Dr. Bednar's opinion is persuasive on the issue of causation. However, it is not the same thing as establishing causation on a specific legal date. The only question in this case was date of manifestation. It was not causation. Okay. Period. In that regard, by the way, the arbitrator's opinion is internally inconsistent. Because if you take a look at the preprinted form on page 2, it says, on this date, Petitioner did not sustain any accident that arose out of him in the course of his employment. Petitioner's current condition of ill-being is not causally related to the accident. It does say that. So, I mean, either there's causal connection or there isn't. Right. I mean, somebody ought to tell me. But the printed form clearly says they have found Bednar's opinion to be persuasive on causation. The only issue in this case is manifestation date. All right. That's the only issue. Well, and to get back to that point, then, the date of manifestation being June 10th of 09, not being proven, when you look at that date of manifestation, the only thing you have to prove that is the petitioner's testimony alone. Okay. But her testimony alone only goes to notice based on the testimony and the ruling of the court. What notice are you talking about? Notice under the Act or her notice that it's work-related? I think it's notice under the Act as to an alleged accident. She gave notice within 45 days of June 10th, the same day, in fact. No question. No question about that fact. We didn't try to, you know, notice was in dispute. But that's, you know, my point being is her notice would only be too late if her manifestation date was some day earlier. Right. But we weren't really, the whole crux is whether she had a date of manifestation on June 10th of 2009, based on the medical evidence and based on her testimony. But her notice, you know, based on her testimony, the notice is as to an alleged accident, not notice to her that she had a work-related injury, per se. You were going through, you were going to read what Mr. Alexie said as far as the objection. Of course, in this kind of instance, often, you know, attorneys will say, I'm only offering this for notice or knowledge or whatever. You know, I mean, is that what was being said at the time? In other words, her knowledge that. Well, you know, I will read it. As opposed to notice under the act. Because, you know, she has an obligation to prove when a reasonable person would have known that she had an injury. Well, and I, you know, in fairness to everyone, if I may just point it out completely, because I want the court to, I want to be totally accurate. What I'm working on now is the issue of notice to comply with Duran's standard as set forth by the Supreme Court. There you go. Okay. So it's clear in the record. Right. Okay. So that's a little, you can interpret that a little bit differently than notice under the act. So he was offering to show when she had noticed. When she had noticed. Right. Now, but when you prove, you know, under Duran, you still have to, you know, just because the petitioner herself has her perception that it might be related to work, you still have to support that with medical evidence from the doctor that's treating her. And I'll get back to this if you'll give me a second to work through this. Because, in other words, you're saying it has to be supported by medical, you can't have a manifestation date when a reasonable person would know this had something to do with work without a doctor's opinion on it? I think that's true. Now, let me tell you something. That's exactly what was rejected in Duran. But that's discovery rule. That's discovery rule. The Supreme Court, I wrote the majority opinion in the appellate level in Duran, and I used the discovery rule. And the Supreme Court reversed it and said it isn't the tort discovery rule when you know your injury and you reasonably should know that it's related to work. You know, they rejected it. They said it was a question of fact for the commission and then reversed the commission. All right. The Duran case, as we all know, was decided on a statute of limitations issue. Isn't that? Statute of limitations was not. We're not arguing statute of limitations in this particular case, just so that record is clear. Okay. There is. Excuse me, sir. Yes, sir. What's the point of whether it's the wrong manifestation date unless. It's statute of limitations. It's statute of limitations. It makes no sense to even talk about it. I mean, you know, if we could see here just for a moment that she was injured at work and so there's some manifestation date out there. So the only importance of the manifestation date is to show whether or not she blew notice or statute of limitations. Or prove that she had an argument. And if the court doesn't say the real manifestation date is this, how do we even know? But you still have to prove accident. Even though it's a repetitive trauma case, manifestation date is intertwined with the issue of accident. Well, wait a minute. But it's a fiction. It's a total fiction. A person works at a repetitive job for year after year after year. When were they injured? The first day they worked on the job or the last day when they couldn't take it anymore? It's a continuum. It builds up over years, sometimes many years. But we've created this legal fiction called manifestation date. Now, I mean, I'm no big fan of the Supreme Court's opinion in Duran for a lot of reasons. But the fact of the matter is they did not adopt the discovery rule, the tort discovery rule. They rejected it. I understand that. And so it's no longer I know I'm injured and I reasonably should know that it was caused by my employment. Because in Duran she was told it was caused by her employment. The Supreme Court said that didn't mean that it was the manifestation date. And so in this particular case, she testifies that she receives a telephone call on June the 10th, 2009, from Dr. DeSandro telling her she's got carpal tunnel syndrome and that he said it was work-related. Is that what she testified to? That's what she testified to. There's no dispute about that in the record. I will not disagree with that statement at all. However, as arbitrator Black said in his decision, DeSandro's records, which were part of the record, did not confirm. I'm not talking about causation. Forget causation on that issue. Black said in the record that Dr. DeSandro's documentary evidence did not confirm that conversation. But wait a minute. But why would it? What does Dr. DeSandro telling her that her carpal tunnel has something to do with work have to do with his treating her? All he's got to know is she's got carpal tunnel and he'll treat her. He doesn't care how she got it. Now, it may be important from a medical history when an injured person gives a doctor a history of how they got hurt, the mechanics of an injury, helps them diagnose it. But once they've got the diagnosis of carpal tunnel, what difference does it make how they got it? Does it make any difference at all? Should that be noted by a doctor? Well, it sure should. Why? It goes to causation. It goes to accident. It goes to manifestation as a condition. The EMG was done May 29th, and then she claims there's nothing in his records to even substantiate or even connect or even discuss her work activities being a cause for this, quote, manifestation date. I'm not saying that the arbitrator's decision is the most well-written decision. We've all been here before, a lot of cases. Mr. Oleski and I have had hundreds of cases. Everybody in this room has had hundreds of cases. And not all these decisions are extremely well-written per se, and it causes problems. But my point being is that for arbitrator Black to say that she didn't prove manifestation on June 10th of 2009 is not against the manifest weight of the evidence when you look at all of the evidence that's contained in this particular case. That's my whole point. Because let me point out one thing I wanted to touch base on. If you go back to, you know, Duran and you've got 3D and you've got Oscar Mayer and all of these, and even the case, that Fierke case that Mr. Oleski cites within his brief about causation and so forth and date of manifestations, all of those records or all of those cases still talk about causation as part of the underlying case. There was absolutely no question in Duran that it was work-related and that there was causation. The whole issue in Duran was the commission found that once she was told, or she asked a question, was it job-related, is it job-related, that was the manifestation that the Supreme Court said on. Yeah, but in Duran, and I understand what you're saying and I'm not disputing that fact, but Duran was remanded back to the Industrial Commission for a causation determination. They had already made one. They reversed it. No. Yes, they did. In all respect, if you take a look at the appellate opinion in Duran, you're going to find out that in Duran, the commission found the manifestation date was outside of the 45 days, and we affirmed it, subject to Justice Holdridge's dissent. I know. It got to the Supreme Court and they said, oh, that wasn't the manifestation date. The evidence in Duran was she said she thought it was work-related, and they said that's not enough. Well, in Duran, the Supreme Court remanded it back to the commission for purposes of determining causation. There was conflicting evidence in the record regarding causation throughout that entire case. We're not talking about causation here. We're talking about manifestation. We affirmed it in Duran. It wasn't filed timely. I agree. It was not on causation. It was based on manifestation date, and that's what they reversed. Sent it back down to make a finding on something they didn't decide. Well, but the manifestation date, the Supreme Court, and I know you wrote the appellate court opinion. I know that. I understand that. And I know you wrote the dissent in that. I've read those, okay? And I've read the Supreme Court decision. And the Supreme Court reverses you and this appellate court, and I understand that. And I know you don't like that, and I don't like it either. Well, I don't mind them reversing me if it's an outcome already in the decision on their part, but that's all right. We do that once in a while, too. No, I understand. But my point being is that they said the statute of limitations did not expire in Duran. Exactly. I agree with that. But the commission had never decided causation. They did not decide causation. So what the Supreme Court said was the statute isn't wrong. Now go back down to the commission and decide if there's a causal relationship. Exactly. I agree with you. But that's not this case. This case has nothing to do with causation. They found causation in this case. There's no question from this language they did when they adopted Bednar's opinion. The only question is, can it be said that finding that she failed to meet her burden of a manifestation of June 10th, 2009, is against the manifest way to the evidence? So I suppose the question goes back to what Justice Stewart asked. What date did it manifest itself? There's nothing in the record to indicate that. Well, yeah, they're talking about things that happened in 2001. They're talking about things that happened in 1992 and 1993. If you're going to turn around and say June 10th isn't the date, don't you have to say what the date is? Well, I don't know. I mean, the arbitrator didn't. He said that the proof, based on the evidence that we have here, did not substitute. The petitioner, as you said earlier today, the respondent doesn't have the obligation to disprove something. Petitioner's direct testimony established a primification case of repetitive trauma with an accident date of June 10th, 2009. That's the arbitrator's language. She appeared to be direct and sincere in her testimony. The primifacia case was eroded but survived cross-examination. Now, if she made out a primifacia case for June 10th, 2009, if you're going to say it isn't June 10th, 2009, you've got to say when it is. And he doesn't. And counsel, it's further confusing. I mean, the arbitrator's decision is very confusing. Right after what Justice Hoffman just read, the next line is, the sequence of events is not consistent with the alleged onset date. I mean, manifestation date is certainly, if it's ending, it's not an onset date. It's not the beginning. It's the end. And so it is very confusing what the arbitrator's written here. I mean, it's all over the board. You know, it seems as if if the arbitrator is going to say June 10th, 2009, she didn't prove that that was the manifestation date. There has to be a determination of another date because it's only relevant if she missed the statute of limitations or the notice date. Well, I can't tell you what the – obviously, we are dealing with what the arbitrator said, that she didn't prove that it was June 10th of 2009. Obviously, he didn't offer us another alternative date to deal with the issue. And for me to sit here and say this is the date of manifestation, you know, I can't tell you what date of the manifestation per se is. I mean, you could pick and choose. We could go back to 07. We could go back to 2001. She's had treatment all along. But if we're going to rely strictly upon what the petitioner herself thinks only, then we're going to be in a world of hurt as we move forward with these cases because any time the petitioner wants to testify, this is the date that I think that it started or this is my perception of it, then let's just have every – you know, every petitioner's testimony is going to be such that whatever they say is what we believe. Well, just to carry it one step further, I mean, the arbitrator says Dr. DeSanto's records didn't support this conversation. But, you know, a few months later in December, Dr. Bednar clearly gave the opinion at the – when she asked him. She asked him, is it work-related? And he wrote in his records, yes, it is work-related. You know, for all I know, the arbitrator meant December should be the manifestation date. And December's the manifestation date. Petitioner wins. Well, but how – if December is the manifestation date and she's already had one of the surgeries earlier than that, then how can you recover for a surgery that predates your manifestation date? Well, I mean, we've had cases. Well, of course you can. Of course you can. Yeah. She can recover under the act for anything that she can prove is causally related to the injury for which she's entitled a compensation, even if that occurs prior to her manifestation date. No, I understand what you're saying. You know, once you establish she's got carpal tunnel, then she's entitled to recover for anything, any medical expenses she expended as a result – as a necessary result of that carpal tunnel. No, I – Even if she didn't realize it was charcoal-related until later. But my point being is they still – you know, he did not believe – the arbitrator did not believe, and the commission affirmed that, and the circuit court affirmed that, on the basis that she did not prove the manifestation date as June 10th of 2009. And I think that's a fair, accurate decision under the record. Is the decision not the best, well-written decision in the world? I agree with that. There's no question about that. I think we've all struggled with that to some extent. So I would ask that this court affirm the circuit court's ruling and the commission's ruling and the arbitrator's. Thank you for your time and your interaction. Thank you very much. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. Several movie titles came to mind as I was listening to the back and forth here. In the Duran case, it says the appellate court affirmed the trial court's decision. Illinois law asserted that the appellate court does not require that a claimant's injury must have been diagnosed by a physician or that a physician have opined that the injury is causally related to her employment. That's for the manifestation date. She testifies unrebutted. She gets a phone call. It's Dr. DeSanto. Yes, I looked at your EMG. It's work-related. She goes to her supervisor. Reasonable person standard. Now I know what it is. I go to my boss and say, this doctor, neurologist, says my problem is my arms are work-related, and I'm reporting. What's wrong with that? I can't find any case law in Illinois that says June 10th is a bad date. And all of you have read the decision of the arbitrator, and I've got to believe that it's quizzical at best. And totally confusing at worst. It should be reversed, remanded, and then let the commission do what they should have done the first time around. Thank you. Any questions? I don't believe there are any. Thank you, Counsel Volz, for your arguments in this matter. It will be taken under advisement and written disposition.